UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

YOLANDA MARIE HERBERT, Personal
Representative of the Estate of MARIE
HERMINIE BARRON, Deceased,

   Plaintiff,        No. 09-CV-12314

vs.               Hon. Gerald E. Rosen

DANNIE RAY BAKER, CITY OF
INKSTER, LT. THOMAS DIAZ and
OFFICER JOHN HANKINS,

   Defendants.
_____/

OPINION AND ORDER REGARDING (1) THE CITY DEFENDANTS'
OBJECTIONS TO MAGISTRATE JUDGE'S ORDER GRANTING
PLAINTIFF'S MOTION TO COMPEL DISCOVERY
AND (2) PLAINTIFF'S MOTION FOR SANCTIONS

At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on    December 21, 2010   

PRESENT: Honorable Gerald E. Rosen
       United States District Chief Judge

I. INTRODUCTION

This matter is presently before the Court on Objections filed by Defendants Thomas Diaz, John Hankins and the City of Inkster (the "City Defendants") to Magistrate Judge Michael J. Hluchaniuk's July 2, 2010 Order Granting Plaintiff's Motion to Compel Discovery. Plaintiff responded to Defendants' Objections and on July 23, 2010, filed a

1

related Motion for Sanctions.  Defendants responded to Plaintiff's Motion and Plaintiff has replied.  Having reviewed the Magistrate Judge's Order, the transcript of the June 17, 2010 hearing, the parties' briefs and the supporting exhibits, the Court is now prepared to rule on this matter.  This Opinion and Order sets forth the Court's ruling.

## II. FACTUAL BACKGROUND

On November 9, 2007, Defendant Dannie Ray Baker appeared at the Inkster, Michigan Police Department to serve his voluntary weekend incarceration pursuant to a Judgment of Sentence imposed upon him in state court for driving with a forged drivers' license.  Immediately upon his appearance, the intake officers detected alcohol on Baker's breath.  A breathalyzer test was subsequently administered which indicated that Baker's blood alcohol content was .09.  The Inkster Police Department has a policy of not admitting intoxicated weekenders.  Because Baker was intoxicated, he was not accepted for his voluntary incarceration and he was directed to call for a ride home.

Baker, however, did not call for a ride.  Contrary to what Baker had told the officers, Baker had driven himself to the police station and had parked his SUV in the parking lot of the skating rink which was on property adjacent to the police department's property.  Baker walked out of the lobby and down the sidewalk to the skating rink, and left in his own vehicle.

A short while later, Inkster Police officers were dispatched to Michigan Avenue and Henry Ruff Roads on a report of a car accident.  When the officers arrived, it was

discovered that Baker was the driver of the SUV which struck Marie Barron's vehicle causing her death.

Baker was subsequently tried and convicted by a jury on charges operating vehicle on a suspended license, causing death; operating a vehicle while intoxicated causing death; and manslaughter due to operation of a motor vehicle. On August 12, 2008, he was sentenced to 15 years' imprisonment.

Meanwhile, on April 18, 2008, Plaintiff instituted this civil action by filing a Complaint against the City of Inkster and the Inkster Police Department in the Wayne County Circuit Court. Defendants answered the Complaint on or about June 2, 2008.[1] The case languished in state court for nearly a year. Then on May 13, 2009, after the Inkster Police Department's motion for summary disposition was granted, Plaintiff, through newly-retained counsel, was granted leave to file an Amended Complaint adding Lieutenant Thomas Diaz and Officer John Hankins as party-defendants, and adding for the first time, federal claims pursuant to 42 U.S.C. § 1983. After being served with process, on June 16, 2009, Defendants Diaz and Hankins removed the case to this Court on federal question grounds.

### III. ISSUES PRESENTLY BEFORE THE COURT

---

[1] It appears that Defendants were served with process shortly before May 5, 2008. *See* 5/5/08 Letter to Kellie Howard-Goudy [Plaintiff's previous counsel] from Gina Puzzuoli [counsel for Defendants] regarding extension of time to answer the complaint, Ex. E to Plaintiff's Reply to Defendants' Response to Motion to Remand [Dkt. # 12-7].

3

Discovery proceeded in this case through March 31, 2010. On April 28, 2010, the City Defendants filed a Motion for Summary Judgment. Two days after being served with the summary judgment motion, on April 30, 2010, Plaintiff filed a timely Motion to Compel Discovery claiming that discovery she had been provided in mid-April in response to her Interrogatories and Requests for Production of Documents was incomplete. Plaintiff had requested production of "any videos or photographs of the inside and outside of the City of Inkster Police Department Station taken of Dannie Ray Baker while he was on the premises and during ingress and egress on November 9, 2007." Plaintiff complained that video clips produced by Defendants from the in-station lobby security camera omitted material portions of video from the relevant time period. She also complained that she had not been provided any video clips from the camera in the hallway behind the front desk or from one of the outdoor security cameras on the side of the police station. Plaintiff claimed that the omitted videos would contain information she needed to support her opposition to Defendants' motion for summary judgment. Defendants responded to Plaintiff's motion stating that they had produced all videotape of Mr. Baker they have.

Plaintiff's motion to compel was referred to Magistrate Judge Hluchaniuk for hearing and determination. After hearing the oral arguments of counsel on June 17, 2010, the Magistrate Judge determined that the requested video clips would be relevant to the litigation. Therefore, he granted Plaintiff's motion to compel. [*See* July 2, 2010

Order, Dkt. #80.] However, Magistrate Judge Hluchaniuk also found that the videotapes of information not previously produced were not preserved. *Id.* Nonetheless, he declined to make any determination as to the significance of any failure to preserve these videotapes stating that he "leaves to the District Court the determination of whether an adverse inference or any other consequences should result from this failure to preserve evidence." *Id.* at p. 2.

Defendants filed objections to the Magistrate Judge's Order. Plaintiff responded to Defendants' objections and also filed a Motion for Sanctions. In her Motion for Sanctions, Plaintiff asks the Court to draw the adverse inference that had the video evidence been preserved, it would have been unfavorable to Defendants. Defendants have responded to Plaintiff's Motion.

## IV. DISCUSSION

### A. DEFENDANTS' OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER

Defendants contend that the evidence they presented to the Magistrate Judge, both in their motion and at the June 17 hearing, establishes that Defendants already provided Plaintiff on several occasions all of the video recordings which they have prior to Plaintiff filing her Motion to Compel. The video recordings in Defendants' possession were produced to Plaintiff's former counsel on August 5, 2008. Defendants then produced for a second time all of the video recordings to Plaintiff's present attorney on April 11, 2010 when defense counsel met with Plaintiff's counsel so that Plaintiff's

5

attorney could view defense counsel's copies of the video recordings. Defendants then again produced a physical copy of these recordings to Plaintiff's counsel on April 23, 2010. The record further shows that these same recordings were the ones provided by the City of Inkster to the Wayne County Prosecutor's Office in December 2007. Plaintiff was also provided a copy of the video recordings given to the Prosecutor pursuant to her subpoena of the Prosecutor's records.

Lieutenant Diaz stated in his Affidavit that no other video recordings exist other than the ones that were provided to Plaintiff's counsel. He further stated that, as to the video camera on the side of the building (from which no video recording from November 9, 2007 was preserved), even if video still existed, that camera would not have picked up Defendant Baker getting into his car as that camera only monitors the police parking lot, not the skating rink parking lot on the adjacent property.

Defendants contend that since they had provided Plaintiff with all of the video evidence they have of Defendant Baker in or around the police station on November 9, 2007, and they did not fail to provide any video evidence in their possession or control, no motion to compel pursuant to Fed. R. Civ. P. 37(a)(3) should ever have been filed. Therefore, they argue that the Magistrate Judge should not have granted Plaintiff's motion.

Defendants further argue that the Magistrate Judge erred in ruling that "information" from all three of the cameras -- the two cameras inside and the one camera

on the outside side wall of the Inkster Police Station -- is relevant to the litigation. Defendants claim that because no video recording is in existence, the Magistrate Judge could not possibly make a determination that the information contained in the video tapes is relevant without first knowing that the non-existent video tapes would depict Dannie Ray Baker. Defendants contend that at least this portion of the Magistrate Judge's Order -- that the information from the cameras did exist and that the information is relevant to the litigation -- is contrary to what the Magistrate Judge stated on the record at the hearing on this matter, at least with regard to the camera on the side of the building.

At the hearing, after Plaintiff's attorneys conceded that they never sought at least a demonstrative use of the camera on the side of the building to see what it captures, Magistrate Judge Hluchaniuk stated:

> THE COURT: [Defendants'] counsel is agreeing that the camera was there at the time. But the question is, what does it actually capture? Because cameras can move or their lenses can be directed in a certain way. I mean I think without some determination as to actually what it might have shown had the -- had the tape been preserved or not, is -- is a separate issue that apparently we don't have the answer to. . .
>
> . . . I mean just showing that the camera is sitting there on the wall on the side of the building isn't particularly helpful in terms of showing what it actually might have picked up had -- had the video been preserved. . . .
>
> \* \* \*
>
> . . . So I mean it's going to be difficult to -- to say what that camera might have shown. And although it's of marginal help I guess to say that you can see the camera on the building, that doesn't really inform us very well as to what the camera might have shown had the video been preserved.

<mark>7</mark>

6/17/10 Hearing Tr. pp. 26-27.

To a certain extent, the Court agrees with Defendants. The discovery requested by Plaintiff in her interrogatories and requests for production was for the production of "any videos or photographs of the inside and outside of the City of Inkster Police Department Station *taken of Dannie Ray Baker* while he was on the premises and during ingress and egress on November 9, 2007." Plaintiff did not request production of *all* security camera video tape from November 9, 2007 or even all security camera video tape from the relevant time period on November 9, 2007. Plaintiff's request was specific to video showing Dannie Ray Baker on the premises.

Defendants have presented evidence attesting that the camera on the side of the building would not have shown Mr. Baker going to his car because he walked on the sidewalk adjacent to the street,[2] not through the police parking lot which is what the side camera monitored, and the skating rink's parking lot is not seen from that camera. Therefore, the motion to compel should not have been granted as to video from that camera.

However, as to the videos from the interior of the police station, having reviewed the video clips provided to the Court, the Court finds that the interior cameras would have shown Mr. Baker leaving the lobby. Therefore, it was not clearly erroneous for the

---

[2] Plaintiff does not dispute that Baker walked on the sidewalk to the skating rink lot, not through the police parking lot. This is evidenced by the video clip from the camera monitoring the front of the building which clearly shows Baker walking out of the police station then down the sidewalk to the parking lot.

8

Magistrate Judge to grant Plaintiff's motion as to the interior cameras.

Defendants state that the missing portions of video tape from the interior cameras for some reason were not preserved. (They also state that videos from the outside camera from November 9, 2007 were not preserved, either.) It is based on the non-preservation of the videotapes, that Plaintiff moves the Court to draw an inference adverse to Defendants.

Defense counsel stated at the hearing before the Magistrate Judge that the cameras save video for 30 days, then the tape is recorded over. Plaintiff has presented no evidence to dispute Defendants' representation. Further, Plaintiff has made no showing that the tapes were destroyed to suppress the truth. The only evidence Plaintiff points to is the testimony of Eric Barnes, the assistant to the Chief of Police, who testified that he attended a meeting on some unspecified date with the City Attorney and several city employees, including a risk manager. Plaintiff infers that future civil litigation arising out of the accident must have been discussed at this meeting and have given rise to a duty to preserve the video tapes.

Federal law of spoilation applies to a case litigated in federal court. *Adkins v. Wolever*, 554 F.3d 650, 651-52 (6th Cir. 2009) (*en banc*). Imposing spoilation sanctions is a matter within the broad discretion of the district court. *Id.* at 653. A party seeking an adverse inference for evidence spoilation must establish

> (1) that the party having control over the evidence had an obligation to preserve it at the time it was destroyed; (2) that the evidence was destroyed

> "with a culpable state of mind"; and (3) that the destroyed evidence was "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support the claim or defense.

*Beaven v. United States Department of Justice*, 622 F.3d 540, 553 (6th Cir. 2010) (citing *Residential Funding Corp. v. DeGeorge Fin. Corp*, 306 F.3d 99, 107 (2d Cir. 2002). In *Beaven*, the Sixth Circuit enunciated the following as standards to govern the district court's discretion:

> [A]n adverse inference for evidence spoilation is appropriate if the Defendants knew the evidence was relevant to some issue at trial and their culpable conduct resulted in its loss or destruction. This depends on the alleged spoilator's mental state regarding any obligation to preserve evidence and the subsequent destruction. An obligation to preserve may arise when a party should have known that the evidence may be relevant to future litigation. The culpable state of mind factor is satisfied by a showing that the evidence was destroyed knowingly, even if without intent to breach a duty to preserve it, or negligently.

622 F.3d at 553-54 (internal citations and punctuation omitted).

In *Beaven*, the appellate court concluded that the district court did not abuse its discretion in determining that an adverse inference was appropriate as a spoilation sanction based on its finding that the defendants were sufficiently on notice of potential litigation to have an obligation to preserve the evidence at issue.

*Beaven* was a lawsuit brought by 106 staff members of the Bureau of Prisons alleging violation of the Privacy Act and claims of common law invasion of privacy under Federal Tort Claims Act. The plaintiffs' claims arose as a result of a Justice

Department investigation into unauthorized computer usage at the BOP's UNICOR[3] work facility at the Federal Medical Center in Lexington, Kentucky. During the course of the investigation, a Justice Department investigator left a file folder that contained all of FMC Lexington employees' names, addresses, Social Security numbers, home telephone numbers, pay grades and other personal information on a civilian employee's desk in the Project Management area of UNICOR. (The investigator had brought the folder with him into this inmate-accessible work area for the purpose of carrying out his investigative work should he need to call one of the UNICOR computer administrators whose information was listed in the folder, along with the information concerning more than a hundred other BOP employees.) The folder was left on the desk in open view around 3:00 a.m. on March 30, 2001. Staff began to admit inmates into this area of UNICOR beginning around 7:30 a.m. but the folder containing the confidential information was not discovered by prison staff until 10:00 a.m. Inmates routinely deposit and remove work papers from the Project Management employees' desks. Three inmates testified that they saw another inmate looking at something on the desk in question for at least two minutes.

Upon learning of the incident, the Union filed a grievance alleging that FMC management had violated the Privacy Act. The BOP Regional Director denied the grievance citing the absence of specific proof that staff had their privacy compromised.

---

[3] UNICOR is the trade name of Federal Prison Industries, Inc.

The Union thereafter arbitrated the issue. In response to the arbitration, the Warden of FMC Lexington issued two memoranda to staff related to the incident. Both memoranda assured staff of the Warden's commitment to investigate the allegations of disclosure of private information and also offered assistance from BOP attorneys in filing administrative tort claims if any allegations proved founded. Within a few weeks of the conclusion of arbitration, however, the Warden directed that the folder be destroyed.

On March 1, 2002, administrative tort claims were filed on behalf of FMC Lexington employees. The BOP denied the claims on August 26, 2002, and on February 19, 2003, a lawsuit was filed in the U.S. District Court for the Eastern District of Kentucky. The district court granted the plaintiffs' motion to sanction the defendants for destroying the folder. A bench trial ensued during which the court imposed the plaintiffs' requested adverse evidentiary inference for spoilation and found that the defendants had violated the Privacy Act by willfully disclosing the plaintiffs' private information.

On appeal, the Sixth Circuit sitting *en banc* affirmed the district court's spoilation ruling. The court found sufficient evidence that the defendants were on notice of potential litigation in the defendants' repeated statements during the course of the grievance proceedings that concerned persons could file tort claims and that the later destruction of the evidence within weeks of the completion of the union grievance proceeding was intentional. The appellate court also found that the defendants'

destruction of the folder severely compromised the plaintiffs' case by depriving the plaintiffs of the most relevant piece of evidence to prove their claims. As the Court of Appeals observed, the plaintiffs' case hinged on whether or not the folder was compromised, constituting disclosure to unauthorized persons. Therefore, the Court found that the district court's spoilation sanction was "necessary to further the remedial purposes of the inference." 622 F.3d at 555.[4]

By contrast, in this case, the only evidence that Plaintiff points to as evidence that Defendants were on notice of a potential lawsuit is evidence of a meeting on some unspecified date after November 9, 2007 attended by the assistant to the Chief of Police, the City Attorney and several city employees, one of whom was a risk manager. This lawsuit, however, was not filed until more than five months after the date of the accident. This, coupled with the unrebutted evidence that as a matter of course, the security cameras save video for only 30 days, and then the tape is recorded over, leads the Court to find insufficient basis to impose an adverse evidentiary inference for spoilation.

Furthermore, unlike the *Beaven* case, the video tape here, if it still existed, is not the only evidence that would support Plaintiff's claim. Plaintiff states that she would use the video tape to show that the Inkster police did nothing to insure that Dannie Ray Baker called for a ride home. Officer Hankins readily admitted in his deposition that he did not

---

[4] The *en banc* Court also determined that even if the district court erred in imposing the evidentiary sanction such error would be harmless because of the district court alternative finding that the plaintiffs had proven disclosure by a preponderance of the evidence, without considering the adverse inference.

take any steps other than to walk Baker to the lobby. He admits he did not watch Baker to see if he used the pay phone and did not watch to see if someone picked him up. Defendants do not even take the position that Hankins went into the lobby with Baker, only that he walked him to the door to the lobby and directed him to call for a ride home. Defendant Hankins' admissions, thus, provide Plaintiff with the same evidence she would have from the video tape.

For the foregoing reasons, Plaintiff's motion for a spoilation ruling will be denied.

## CONCLUSION

For all of the reasons stated above in this Opinion and Order,

IT IS HEREBY ORDERED that the Magistrate Judge's Order Granting Plaintiff's Motion to Compel is AFFIRMED, IN PART, AND REVERSED, IN PART. The Order is reversed only with respect to the Magistrate Judge's findings with respect to the video tapes from the camera on the side of the police station which monitored the police parking lot. In all other respects, the Order is affirmed.

IT IS FURTHER ORDERED that Plaintiff's Motion for Sanctions is DENIED.


                                            s/Gerald E. Rosen
                                            Chief Judge, United States District Court

Dated: December 21, 2010

I hereby certify that a copy of the foregoing document was served upon counsel of record on December 21, 2010, by electronic and/or ordinary mail.

                                        s/Ruth A. Gunther
                                        Case Manager